**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 12-2067

UNITED STATES OF AMERICA,

Appellee,

v.

ALEX S. RODRÍGUEZ-SANTANA,
a/k/a Puruco, a/k/a Indio, a/k/a Alex R. Santana,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before
Torruella, Baldock,[*] and Thompson,
Circuit Judges.

Thomas J. Trebilcock-Horan, Assistant Federal Public Defender, with whom Héctor E. Guzmán, Jr., Federal Public Defender, Héctor L. Ramos-Vega, Assistant Federal Public Defender, and Liza L. Rosado-Rodríguez, Research & Writing Specialist, were on brief, for appellant.

Dina Ávila-Jiménez, Assistant United States Attorney, with whom Rosa Emilia Rodríquez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief Appellate Division, and John A. Mathews II, Assistant United States Attorney, were on brief, for appellee.

---

[*] Of the Tenth Circuit, sitting by designation.

February 7, 2014

**BALDOCK, Circuit Judge.** By way of appeal, Defendant Alex Rodríguez-Santana seeks to challenge the special sex-offender conditions (SOC) of his supervised release. We exercise jurisdiction pursuant to 18 U.S.C. § 3742(a)(1).

I.

Defendant moved from Delaware to Puerto Rico around January 2010. In July 2011, Defendant pleaded guilty to one count of failing to register as a sex offender with Puerto Rican authorities in violation of 18 U.S.C. § 2250(a). Section 2250(a) criminalizes the knowing failure to comply with the Sex Offender Registration and Notification Act (SORNA), 42 U.S.C. §§ 16901–16962. The indictment alleged SORNA required Defendant to register by reason of his 1994 Delaware state conviction for unlawful sexual intercourse with a victim between the ages of twelve and fifteen.

Prior to pleading guilty, Defendant entered into a plea agreement with the Government pursuant to Fed. R. Crim. P. 11(c)(1)(C). The agreement advised Defendant of, among other things, the maximum penalties for his offense. Those penalties included the imposition of a five or more year term of supervised release. In particular, defense counsel informed the court at Defendant's change of plea hearing that she had discussed with and explained to Defendant "the terms of supervised release." Aplt's App. at 86. The court then addressed Defendant:

> [W]ith respect to the term of supervised release that may
> be imposed, after you are released from prison, you will

> be under the supervision of a probation officer for a
> term that will be imposed by the court at sentencing.
> During that term, you will have to comply with certain
> conditions. If you violate any of those conditions, the
> probation officer will tell the court, and [the court]
> can impose additional time in prison on you. Do you
> understand that?

Id. Defendant answered "yes" without asking the court what those
conditions might be. Id.

The probation office subsequently prepared its pre-sentence
investigation report (PSR). The PSR recommended imposing special
conditions of supervised release related to Defendant's sex
offender status. Defendant specifically objected to three of those
conditions in a pre-sentence filing:

> "Defendant objects . . . with regards to special sex
> offender conditions, 'SOC', all included in the PSR in
> paragraphs 62, 63 and 65. The SOC recommended . . . are
> not reasonably related to the statutory sentencing
> factors in 18 U.S.C. § 3553(a)(1) and (a)(2)(B)-(D) and
> . . . involve a 'greater deprivation of liberty than is
> reasonably necessary' to serve the purposes of
> deterrence, protection of the public, and training and
> treatment as prescribed by 18 U.S.C. § 3583(d).

Id. at 32–33. Paragraph 62 of the PSR recommended Defendant not
"work with children," or engage in employment "bearing a reasonable
direct relationship to the conduct constituting the offense."
Aplt's Supp. App. at 20. Paragraph 63 recommended in relevant part
that Defendant "undergo a sex-offense-specific evaluation and
participate in a sex offender treatment and/or mental health
treatment program" and "abide by all rules, requirements, and
conditions of the sex offender treatment program(s), including

-4-

submission to polygraph testing." Id. Lastly, Paragraph 65 recommended Defendant not reside with minors or have unsupervised contact with them.

At sentencing, the district court accepted the plea agreement and sentenced Defendant to 27-months imprisonment consistent therewith. The court rejected Defendant's objections to the PSR and ordered that following his release from confinement Defendant be placed on supervised release for a 10-year term subject to the SOC set forth in the PSR, as slightly modified. Defendant timely appealed. As he argued in the district court, Defendant says, not without some force, that the remoteness of his 1994 sex offense renders the SOC imposed by the district court unlawful.

## II.

The obstacle confronting Defendant is simply this: The plea agreement contained a waiver of appeal provision stating that if the district court accepted the agreement and sentenced Defendant "according to its terms, conditions, and recommendations," Defendant "waive[d] and surrender[ed] his right to appeal the conviction and sentence." Aplt's App. at 15. During his change of plea hearing, Defendant told the court he understood that if the court sentenced him consistent with the plea agreement, he waived his right to appeal the conviction and sentence. At the conclusion of the hearing, the court found Defendant's plea of guilty was knowing and voluntary, and he was aware of its consequences.

-5-

In United States v. Rivera-López, 736 F.3d 633 (1st Cir. 2013), we recently held the appellate waiver contained in a defendant's plea agreement extended to conditions of supervised release. Like Defendant's waiver here, the "'Waiver of Appeal' stated that Rivera would not seek appellate review of any 'judgment and sentence' that was in accordance with the agreement's terms and recommendations." Id. at 634. Our construction of the appellate waiver in Rivera-López, by which we are bound, was undoubtedly correct because "[a] supervised release term is an integral part of a sentence" generally encompassed within any broadly-worded agreement not to appeal a "sentence." United States v. Brown, 235 F.3d 2, 4 (1st Cir. 2000). See also 18 U.S.C. § 3583(a) (treating a term of supervised release as part of a sentence); 18 U.S.C. § 3624(e) (same); 18 U.S.C. § 3742(a)(3) (same).

In Rivera-López, we explained that "[w]here knowing and voluntary, an appellate waiver is generally enforceable, absent indications that such a waiver would work a 'miscarriage of justice.'" Rivera-López, 736 F.3d at 635. In this case, Defendant does not argue his plea agreement should be set aside; nor could he. Defendant does not claim his sentence is inconsistent with the plea agreement's "terms, conditions, and recommendations." Moreover, the plea colloquy before the district court confirms Defendant's plea was knowing and voluntary. That the agreement does not specify the conditions of Defendant's supervised release

-6-

is inconsequential.  In <u>United States</u> v. <u>Ruiz</u>, 536 U.S. 622, 629 (2002), the Supreme Court told us "the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would apply *in general* in the circumstances—even though the defendant may not know the *specified detailed* consequences of invoking it."  (emphasis in original).

### III.

That leaves us with the question of whether Defendant's appellate waiver works a miscarriage of justice.  "The miscarriage of justice exception is strong medicine."  <u>United States</u> v. <u>Chambers</u>, 710 F.3d 23, 30–31 (1st Cir. 2013).  While we have not conclusively set the parameters of this exception, "[w]hat is clear . . . is that the exception is to 'be applied sparingly and without undue generosity'; mere 'garden-variety' claims of error are insufficient to sustain an appeal in the face of waiver."  <u>Rivera-López</u>, 736 F.3d at 635 (quoting <u>United States</u> v. <u>Teeter</u>, 257 F.3d 14, 26 (1st Cir. 2001)).  Before applying this exception, we require, "at a bare minimum, an increment of error more glaring than routine reversible error."  <u>Chambers</u>,710 F.3d at 31 (quoting <u>United States</u> v. <u>Nguyen</u>, 618 F.3d 72, 75 (1st Cir. 2010)).  Absent an appellate waiver, the "hallmark that separates impermissible conditions [of supervised release] from permissible ones is whether, on a given set of facts, a particular restriction is

*clearly unnecessary*." Brown, 235 F.3d at 7 (emphasis added). Something still more is required where a defendant waives the right to appeal his sentence. The conditions must be "so clearly erroneous and unsubstantiated as to work a miscarriage of justice." Rivera-López, 736 F.3d at 637.

Defendant correctly points out that, apart from mandatory conditions of supervised released, special conditions imposed under 18 U.S.C. § 3583(d) must be reasonably related to the factors set forth in section 3553(a)(1) and (a)(2)(B)-(D), and involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth in the latter three subsections. But here we cannot say the three SOC to which Defendant objects are *so far removed* from the "nature and circumstances of the offense and the history and characteristics of the defendant" that they are clearly erroneous. 18 U.S.C. § 3553(a)(1). Nor can we say the need to (a) "afford adequate deterrence to criminal conduct," (b) "protect the public from further crimes," and (c) "provide the defendant with needed . . . correctional treatment," does not *in some sense* serve to justify those conditions. 18 U.S.C. § 3553(a)(2)(B)-(D).

As we explained in United States v. Morales-Cruz, 712 F.3d 71, 75 (1st Cir. 2013), "SORNA registration serves a purpose: to protect the community from the risks posed by convicted sex offenders by requiring registration and then by providing notification. . . . Registration requirements such as those SORNA

imposes are justified by the high recidivism rate for offenders."
We well understand that Defendant's conviction requiring SORNA
registration is two decades old. But according to the PSR,
Defendant's conviction was followed by a prison escape and
probation violation that sent him back to prison. Once released,
Defendant continued to engage in acts of criminal aggression. Then
in 2008, Defendant was convicted under Delaware law of failure to
register as a sex offender. In 2010, Puerto Rico convicted him of,
among other things, attempted aggravated burglary. A minor
assisted Defendant in committing that crime. Defendant's ongoing
criminal activity, including his failure to register as a sex
offender in multiple jurisdictions, illustrates an utter disrespect
for the law.

Given Defendant's criminal record, the district court's
apparent conclusion that his history presents a recidivism risk,
warranting both deterrence and rehabilitation is hardly
unsubstantiated. See Rivera-López, 736 F.3d at 637. Having said
that, let us be absolutely clear: Given the waiver of appeal,
which "requires more than reversible error to sustain a miscarriage
of justice," we need not delve into "the exact contours of a
court's ability to impose such conditions" absent such waiver. Id.
at 636. And we express no opinion as to whether the SOC of
Defendant's supervised release would pass muster "if squarely
before us on appeal." Id. We hold only that the district court's

-9-

imposition of the SOC does not constitute a miscarriage of justice.

IV.

One final matter:  At oral argument the Court inquired of the Government whether a fourth condition of Defendant's supervised release was warranted.  This condition—which Defendant objected to in the district court but does not clearly identify on appeal as a SOC—is that he permit monitoring of any device with internet access, or data or video storage or sharing capabilities, and consent to unannounced examinations of such device.  The Government conceded this condition *may* not be justified, at least in the absence of any explanation by the district court.  Accordingly we vacate that particular condition of Defendant's supervised release. On remand, the Government may in its discretion seek an explanation for such condition.

DISMISSED IN PART, VACATED IN PART, AND REMANDED.